**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 21-161-RBW** |
| | : | |
| **DUSTIN BYRON THOMPSON** | : | |
| **ROBERT LYON** | : | |
| | : | |
| **Defendants.** | : | |

**UNITED STATES' MOTION TO CONTINUE AND**
**TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**

The United States of America hereby moves this Court to set an arraignment in 60 days, and to exclude the time until that next arraignment date from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendants in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). In support of its motion, the government states as follows:

**FACTUAL BACKGROUND**

Defendants are charged via indictment with offenses related to crimes that occurred at the United States Capitol on January 6, 2021.   In brief, on that date, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there.   As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the

Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.   This event in its entirety is hereinafter referred to as the "Capitol Attack."

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.   Over 300 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged.   While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021.   The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia.   Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington

County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police.   Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over 210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps.   As the Capitol Attack investigation is still on-going, the number of defendants charged and the volume of potentially discoverable materials will only continue to grow.   In short, even in cases involving a single defendant, the volume of discoverable materials is likely to be significant.

The United States is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.   Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing and producing discovery across the Capitol Attack cases.   Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants will be provided within the next thirty to sixty days.   Cases that do not involve detained defendants will follow thereafter.   Such productions will also be supplemented on an on-going basis.   In the longer term, the plan will include a system for storing, organizing, searching, producing and/or

making available voluminous materials such as those described above in a manner that is workable for both the government and hundreds of defendants.   This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

Defendants in this case are charged via indictment with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and (2) (Count One); Entering and Remaining in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(1) (Count Four) Disorderly and Disruptive Conduct in a Restricted Building or Grounds under 18 U.S.C. § 1752(a)(2) (Count Five); Disorderly Conduct in a Capitol Building under 40 U.S.C. § 5104(e)(2)(D) (Count Six); and Parading, Demonstrating, or Picketing in a Capitol Building under 40 U.S.C. § 5104(e)(2)(G).   In addition, each Defendant is charged with one count of Theft of Government Property under 18 U.S.C. § 641 (Counts Two and Three).   The complaint in this case alleged that Defendants entered the U.S. Capitol building on January 6, 2021 and stole a coat rack and bottle of bourbon. *See* Dkt. 1-1 at 2-9.   They are currently out of custody on bond.

At Defendants' initial appearance in this District on the charges in the complaint, the magistrate court, based on the parties' joint motion, excluded the 35 days between January 28, 2021 and March 4, 2021, under the Speedy Trial Act, because the ends of justice served by a continuance during that time outweighed the best interest of the public and the defendant in a speedy trial.   *See* Dkt. (minute entry for January 28, 2021).   Defendants were indicted on February 26, 2021.   Dkt. 8.   Magistrate Judge Faruqui directed the parties to reach out to this Court to set an arraignment date.

4

**ARGUMENT**

Pursuant to the Speedy Trial Act, an indictment charging an individual with the commission of an offense generally must be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161(b).   Further, as a general matter, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.    18 U.S.C. § 3161(c)(1).

Section 3161(h) of the Speedy Trial Act sets forth certain periods of delay which the Court must exclude from the computation of time within which a trial must commence.    As is relevant to this motion for a continuance, pursuant to subsection (h)(7)(A), the Court must exclude:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A).   This provision further requires the Court to set forth its reasons for finding that that any ends-of-justice continuance is warranted.   *Id.*   Subsection (h)(7)(B) sets forth a non-exhaustive list factors that the Court must consider in determining whether to grant an ends-of-justice continuance, including:

(i)   Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii)   Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel

> questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
> . . .
>
> (iv)   Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).    Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection (h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An interests of justice finding is within the discretion of the Court.    *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv).    As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice.    Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time.    Even after a system generally agreeable to the government and the Federal Public Defender is designed and

6

implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials.    Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act.    *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling 18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); **United States v. Bell**, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (district court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of

documents that needs to be catalogued and separated, so that the parties could identify the relevant ones") (internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").   Even in what may appear superficially to be relatively simple cases, the voluminous discovery noted above needs to be sorted and sifted through in order for the government and defense counsel to, among other things, review discovery that may not currently be known to the case team for *Brady* information.

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice.   Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendants in a speedy trial.

In addition, and as an independent ground for excluding time, the Chief Judge of the United

States District Court for the District of Columbia has issued Standing Order No. 21-10, which addresses the need to exclude time under the Speedy Trial Act due to the ongoing Coronavirus Disease 2019 (COVID-19) pandemic.    *See In Re: Limited Resumption of Criminal Jury Trials in Light of Current Circumstances Relating to the COVID-19 Pandemic*, Standing Order No. 21-10 (BAH) (Mar. 5, 2021).    In that Standing Order, the Chief Judge noted that the time period from March 17, 2020 through March 15, 2021 had already been excluded under the Speedy Trial Act in all criminal cases.    *Id.* at 5.    The Court then noted that, while it was anticipating a limited resumption of criminal trials, the Court's plans permit "no more than one jury selection" to take place on "a given day, and no more than three trials . . . will take place within the courthouse at one time" before August 31, 2021, due to COVID-19 health and safety measures implemented in the courthouse.    *Id.* at 4-5.    The Court therefore had prioritized trials based on factors such as length of detention, whether witnesses would be required to travel from out of town, and previously established trial dates.    *Id.* at 4.    Finally, noting the then-current statistics regarding COVID-19 case counts and other findings relating to the health and safety measures in this District that impact the ability of the Court to re-open safely for criminal trials, the Chief Judge found that "for those cases that cannot be tried consistent with" the "health and safety protocols and limitations" set out by the Court's continuity of operations and master trial plans, the "additional time period from March 15, 2021 through August 31, 2021" would be "excluded under the Speedy Trial Act as the ends of justice served by the continuances to protect public health and safety and the fair trial rights of a defendant outweigh the best interest of the public and any defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3151(h)(7)(A)."    *Id.*

Consistent with that Standing Order, this Court should also exclude the time until the

9

arraignment date set in 60 days due to the health and safety measures discussed in the Standing Order, and the practical impossibility of two out-of-custody defendants arrested well after many other detained defendants in this District proceeding to trial before that time.

The government reached out to defense counsel for Mr. Lyon and Mr. Thompson to determine whether they oppose this motion.   Counsel for Mr. Thompson has indicated he does not oppose this motion.   Counsel for Mr. Lyon has not yet informed the government whether Mr. Lyon opposes the motion.

WHEREFORE, the government respectfully requests that this Court grant the motion to set an arraignment in 60 days, and to exclude the time until that next arraignment date from the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq*., on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendants in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:      /s/ *William Dreher*_____
WILLIAM DREHER
Assistant United States Attorney
D.C. Bar No. 1033828
700 Stewart Street, Suite 5220
Seattle, WA 98101
(206) 553-4579
william.dreher@usdoj.gov

10